**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
SANDY HOLLOW ASSOCIATES LLC
and PORT NORTH CONSTRUCTION LLC,

                  Plaintiffs,

         - against -

INCORPORATED VILLAGE OF PORT
WASHINGTON NORTH, ROBERT S.
WEITZNER *individually and as Mayor of the*
*Village of Port Washington North*, STEVEN
COHEN, SHERMAN SCHEFF and MICHAEL
SCHENKLER *individually and in their official*
*capacity as members of The Board of Trustees*
*for the Incorporated Village of Port Washington*
*North*, and ROBERT BARBACH, individually
*and as Building Inspector for the Village of Port*
*Washington North*,

         Defendants.
-------------------------------------------------------------X

                             **REPORT AND**
                             **RECOMMENDATION**

                             CV 09-2629 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

        Plaintiffs Sandy Hollow Associates ("Sandy Hollow") and Port North Construction LLC

(together, "Plaintiffs") commenced this action against the Incorporated Village of Port

Washington North (the "Village") and Robert S. Weitzner, individually and as Mayor of the

Village of the Village; Steven Cohen, Sherman Scheff and Michael Schenkler, individually and

in their official capacity as members of the Board of Trustees for the Village; and Robert

Barbach, individually and as Building Inspector for the Village (together, the "Individual

Defendants"), for monetary damages and declaratory and injunctive relief. Plaintiffs' claims

arise out of Sandy Hollow's purchase from the Village of property which was then re-zoned and

subdivided and on which a senior citizens residential development was built. In the present

action, Plaintiffs seek declaratory and injunctive relief and compensatory damages based upon, *inter alia*, causes of action for deprivation of Plaintiffs' constitutional rights pursuant to Section 1983, fraud and rescission of a deed, repayment of purportedly illegal fees, and ultra vires acts. Plaintiffs also seek an order enforcing the terms of the Declaration of Restrictive Covenants signed by Sandy Hollow and the Village on March 14, 2002. Defendants move (1) for judgment on the pleadings under Rule 12(c), seeking dismissal of Plaintiffs' Complaint in its entirety, and (2) to vacate the *lis pendens* filed by Plaintiffs on a portion of the subject property. Judge Feuerstein has referred the motion to me for a Report and Recommendation. For the reasons set forth below, I respectfully recommend to Judge Feuerstein that Defendants' motion be GRANTED.

## II.   BACKGROUND

### A.   Factual Background[1]

In 1998, Sandy Hollow purchased from the Village a 40-acre parcel of property (the "Property") which was located within the Village's "Economic Development Zone A." Compl., ¶¶ 24-27. In July 1998, Sandy Hollow filed a petition with the Village Board of Trustees ("Board of Trustees") to amend the Village Zoning Code to permit construction of a "327-unit senior residential planned unit development zone" (to be known as Mill Pond Acres). *Id*., ¶ 28; Declaration of Brian Sokoloff in Supp. of Defs.' Mot. to Dismiss ("Sokoloff Decl.") [DE 36], Ex. B. Upon receipt of Plaintiffs' application, the Village retained JAC Planning Corp. ("JAC") to assist the Board in reviewing Sandy Hollow's re-zoning application. Compl., ¶ 29. In December 1999, JAC issued a report (the "JAC Study") concluding that Plaintiffs' proposed

---

[1]     The Court accepts the factual allegations set forth in the Complaint as true and draws all reasonable inferences in favor of Plaintiffs, as the non-moving parties. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

housing complex for the aging population "was desirable, in the best interests of the Village and consistent with a comprehensive plan of development." *Id*., ¶ 30; Sokoloff Decl., Ex. C. Pursuant to the Village's demand, Plaintiffs paid the cost of the JAC Study. Compl., ¶ 122.

In July 2000, the Board declared itself to be the lead agency under New York's State Environmental Quality Review Act ("SEQRA"), N.Y. E.C.L. Art. 8, and conducted a coordinated review of Plaintiffs' re-zoning application. *Id*., ¶ 31. Plaintiffs hired several consultants to compile a Draft Environmental Impact Statement ("DEIS"), which was accepted by the Village on November 12, 2001. Sokoloff Decl., Ex. D. In and around December 2001, a public hearing was held on Plaintiffs' DEIS, during which many residents expressed concern over the development of the entire parcel, the loss of open space, and the impact on certain wildlife and avian species. Compl., ¶ 32. Following the public hearing, the Village determined that Sandy Hollow should agree to deed eight (8) acres in the northerly portion of the Property to the Village for use as "permanent open space." *Id*. Plaintiffs commissioned the compilation of the Final Environmental Impact Statement ("FEIS"), which was adopted by the Village on February 11, 2001. *Id*., ¶ 33; Sokoloff Decl., Ex. E. Plaintiffs allege that the FEIS states "in no less than 30 separate places that the 8 acres would remain open space in order to mitigate the effects on the neighboring residents, wildlife and avian species, noise, and open space requirements." Compl., ¶ 33.

On February 28, 2002, the Village issued its Findings Statement For The Proposed Zoning Amendment ("Findings Statement") as required by SEQRA (as amended on March 11, 2002). The Findings Statement noted that Sandy Hollow's proposed development was consistent with the Village's zoning scheme, the JAC Study and the Village's future needs. *Id*., ¶ 34;

Sokoloff Decl., Ex. F. The Findings Statement further asserted that the proposed project would "cause a significant adverse impact on existing vegetation and woodlands," which would adversely affect the habitats of various animals. Compl., ¶ 34; Sokoloff Decl., Ex. F at 23-24. The Findings Statement also concluded that setting aside the eight acres at the northern edge of the Property as "permanent open space for the Village" would reduce "the impact on woodlands and vegetation," "reduce any adverse visual impact" to the surrounding single-family residences and "mitigate impacts on interior avian species." Compl., ¶ 34; Sokoloff Decl., Ex. F at 23-24, 45, 51. Following the issuance of the Findings Statement, Sandy Hollow agreed to convey the eight-acre parcel to the Village. Compl., ¶ 35.

On March 14, 2002, the Village Board[2] approved Sandy Hollow's re-zoning application and adopted the re-zoning amendment. *Id.*, ¶ 35; Sokoloff Decl., Ex. H. On the same day, Sandy Hollow and the Village entered into a Declaration of Covenants and Restrictions ("Declaration"), memorializing Sandy Hollow's commitments to, *inter alia*, (i) build certain structures on the Property; (ii) pay the Village $3,500 for each unit sold (up to a maximum of $875,000) to be used "to acquire, maintain and/or refurbish public open space on the Village waterfront;" and (iii) transfer title to the eight-acre parcel to the Village by bargain and sale deed. Compl., ¶ 36; Sokoloff Decl., Exs. H, I. Plaintiffs allege that the Declaration prohibited any future changes to the site plan that would eliminate the eight-acre parcel as open space. Compl., ¶ 37.

---

[2]     In the Motion to Dismiss, Defendants request that the Court take judicial notice that Mayor Thomas Pellegrino and Trustees Gary Levi, Edward Ratkowski, Bert Goodstadt, and Ross Altman were the members of the Board of Trustees on March 13, 2002, and none of these people are named as defendants in this action. *See* Defs.' Reply Mem. at 5, n.7 & Exs. G, H. In light of the fact that this is public information, the Court takes judicial notice.

Thereafter, Sandy Hollow applied to the Planning Board for subdivision approval, and on August 13, 2002, the Planning Board adopted the Amended SEQRA Findings Statement in its entirety. *Id*., ¶ 38; Sokoloff Decl., Exs. L, M. On December 23, 2002, the Planning Board issued final subdivision and site plan approval for the development. Compl., ¶ 38; Sokoloff Decl., Ex. N. In early 2003, Sandy Hollow obtained building permits and began construction of the condominium units. Compl., ¶ 39; Sokoloff Decl., Ex. O.

Pursuant to the agreement set forth in the Declaration of Restrictive Covenants, Sandy Hollow and the Village executed a Bargain and Sale Deed dated March 9, 2005 (which was subsequently corrected on May 3, 2005) (the "Deed"), pursuant to which Sandy Hollow conveyed title of the eight-acre parcel to the Village. Compl., ¶¶ 40, 104; Sokoloff Decl., Ex. J. Also in March 2005, Sandy Hollow advised the Village of its projected closing schedule for Mill Pond Acres, namely, that approximately 100 of the units were ready to close, and that Sandy Hollow needed the Certificates of Occupancy ("C/O") for each unit to be issued by the Village in order to schedule the respective closings. Compl., ¶ 41. Sandy Hollow alleges that it "had numerous people who were anxiously waiting to close, including people who had sold their homes and needed a place to live." *Id*.

On April 1, 2005, the Village held an election and a new Mayor and several new members of the Board of Trustees were elected.[3] *Id*., ¶ 42. By letter dated May 12, 2005, the Village Building Inspector informed Sandy Hollow that (1) its building permits had expired; (2) "new building permits must now be obtained from the Building Department before any

---

[3] **Error! Main Document Only.**Defendants request that the Court to take judicial notice of the Board members elected on April 1, 2005, namely, Mayor Robert Weitzner and Board members Steven Cohen, Michael Malatino, Daria Hoffman and Michael Schenkler, none of whom served in 2002. Defs.' Reply Mem.at 5, n.9 & Exs. G, H. In light of the fact that this, too, is public information, the Court takes judicial notice.

additional work may be performed on any of the units;" and (3) certain permit applications were never approved and only a partial fee was received for such applications. Sokoloff Decl., Ex. P; Compl., ¶ 43. The letter further directed Sandy Hollow "to immediately cease and desist from any work for which the permits have expired or never been approved." Sokoloff Decl., Ex. P. In a letter dated May 18, 2005, the Village Building Inspector acknowledged receipt of Sandy Hollow's applications for C/Os for several units. Sokoloff Decl., Ex. Q.

Sandy Hollow subsequently renewed its building permits at a cost of $201,000. Compl., ¶ 48; Sokoloff Decl., Ex. R. In connection with the completion of the project, Sandy Hollow also paid $125,000 in lieu of building a Village Hall on the Property; $200,000 in connection with one-third of an acre of the Property to be used to build a single-family home; and "impact fees" in the amount of $875,000. Compl., ¶ 36 n.2, ¶ 49.

On June 3, 2005, a performance bond was issued to J.D. Posillico, Inc., the sub-contractor for Plaintiff Port North Construction, for the benefit of the Village, in the amount of $3,434,689, to ensure completion of certain work (as set forth in Exhibit A to the Bond). Sandy Hollow and the Village are listed as obligees on the Bond. Compl., ¶¶ 53, 133; Sokoloff Decl., Ex. S.

In and around June 2005, Sandy Hollow learned that the Village was considering selling the eight-acre parcel. *Id.*, ¶ 50. Thereafter, Sandy Hollow and the Village entered into an agreement dated June 8, 2005, pursuant to which Sandy Hollow (the Releasor) released the Village and its Trustees and Officers (the Releasees) from

> (i) all claims now existing or which have accrued through the date of this Release related to [the eight-acre parcel, and]
>
> (ii) from any claim by the Releasors accruing after the date of this Release that the Property has been sold by the Releasees and that the

Releasors have not been selected by the Releasees as the purchaser of Property, provided however, that this Release shall not be deemed to release the Releasees from any liability or claim for contribution or indemnification or other third party liability against the Releasors, however denominated, that the Releasors may suffer or incur in connection with the Property.

*Id.*, ¶ 51; Sokoloff Decl., Ex. T (the "Release"). Subsequently, the Village issued 47 C/Os to Sandy Hollow. Compl., ¶ 54.

In approximately July 2006, Sandy Hollow completed construction of Mill Pond Acres, sold the remainder of the units, and obtained the certificates of occupancy for those units. Compl., ¶ 55. At the conclusion of construction, the Building Inspector and Village Engineer created a "punch list" of additional or outstanding items to be fixed, and provided the list to Plaintiffs. *Id.*, ¶ 56. The Building Inspector and/or Village Engineer further inspected and approved the subsequent corrective work performed by Plaintiffs. *Id.*

In mid-2007, Sandy Hollow, on behalf of its sub-contractor, requested that the Performance Bond be released. *Id.*, ¶ 57. Following an inspection of the premises, the Village Engineer recommended that the bond be released. *Id.* On March 12, 2009, the Village issued a Summons to Sandy Hollow, alleging violations of the Building Code and that certain work had not been performed in accordance with the approved plans. *Id.*, ¶ 61; Sokoloff Decl., Ex. U. In April 2009, the Village held a fact-finding hearing regarding release of the Bond, following which the Board declared a "default" under the Bond and "announced its intention to go after the Bond." Compl., ¶ 60.

Plaintiffs filed the Complaint in this action on June 5, 2009. In the Complaint, Sandy Hollow alleges that it "recently learned that the Village is engaged in negotiations to sell or has

contracted to sell the 8-acre vacant parcel[4] to a development for approximately $12 million[,]" in

"blatant violation and repudiation of its own SEQRA Findings . . ." and that the developer

intended to construct 45 townhouses on the property.  Compl., ¶¶ 9, 62-63.  Plaintiffs state that it

learned this information from the September 2008 newsletter for the Village and that, upon

information and belief, the sale has not yet occurred and the eight acres remain titled in the

Village.  *Id.*, ¶¶ 62-64.

**B.** **Plaintiffs' *Lis Pendens***

On June 10, 2009, Plaintiffs filed a *lis pendens* on the Village's eight-acre parcel of land,

as a result of which the Village has been unable to sell the parcel and currently maintains title

over that property.  Sokoloff Decl., ¶ 63 & Ex. V.  Plaintiffs amended the *lis pendens* on July 29,

2009.  Defs.' Mem. at 19.  Defendants ask the Court to take notice of the *lis pendens*, a copy of

which is annexed as Exhibit V to the Sokoloff Declaration.

**C.** **Summary Of Plaintiffs' Claims**

Plaintiffs allege eleven causes of action against Defendants arising out of the events

detailed above.  First, Plaintiffs assert violations of their substantive and procedural due process

rights against all Defendants under 42 U.S.C. § 1983 and seek a declaration that Defendants

wrongfully deprived them of their property rights under the Fourteenth Amendment.  Plaintiffs

further allege that the Individual Defendants conspired with each other to engage in the

foregoing conduct, also in violation of Section 1983, in relation to arbitrarily withholding the

---

[4]     Plaintiffs allege that the Village has conveyed portions of the 8-acre parcel to abutting
property owners to settle adverse possession claims and so the property at issue here is actually
now approximately 7.5 acres.  Compl., ¶ 63, n.3.

C/Os, among other things. Compl., ¶¶ 65-86.[5] Plaintiffs seek $15 million in damages and a declaratory judgment "that the defendants, acting under color of State law, wrongfully deprived plaintiffs of its property rights in violation of the Fourteenth Amended of the United States and New York Constitution. . . ." *Id.*, ¶¶ 82, 86.

Plaintiffs also assert claims for fraudulent inducement and misrepresentation against all Defendants, and aiding and abetting fraud against the Individual Defendants, in connection with Plaintiffs' application to re-zone the Property. According to the Complaint, Defendants made knowingly false and material misrepresentations regarding the "significant adverse environmental impact" which would result from the re-zoning and development of the Property, and the consequent need for Plaintiffs to deed the eight acres to the Village for use as "permanent open space." *Id.*, ¶¶ 87-102. In connection with such alleged fraud, Plaintiffs seek (1) $15 million in damages (*id.*, ¶¶ 97, 102); (2) rescission of the Bargain and Sale Deed transferring title of the eight acres (*id.*, ¶¶ 103-104); (3) an Order enjoining the Village from, *inter alia*, "[s]elling, transferring or using all or any portion of the 8-acre parcel for development, whether commercial or residential, in a manner that is contrary to or inconsistent with the specific uses and purposes prescribed by the Village . . . in its SEQRA Findings and Planning Resolutions. . . ." (*id.*, ¶¶ 105-106); and (4) an Order declaring that "any proposed transfer or sale of the 8-acre parcel is void and invalid as a matter of law") (*id.*, ¶ 111). Plaintiffs further maintain that by attempting to sell the eight-acre parcel for development instead of retaining it as "permanent open space," Defendants have breached the Declaration of Covenants and

---

[5]     In the Complaint, Plaintiffs also allege that Defendants were liable under Section 1983 for the deprivation of Plaintiffs' "protectable and vested property interest[s]" in the release of the Performance Bond. Compl., ¶ 72. In their Opposition papers, however, Defendants "concede that they have no vested right in the release of the Performance Bond as alleged in paragraph 72 of the Complaint[,]" and therefore withdraw that portion of their Section 1983 claim. Pls.' Mem. at 37 n.25.

Restrictions. As an alternative to rescission of the Deed, Plaintiffs request that "the terms of the Declaration be enforced in their entirety, and an award of legal fees in an amount to be determined by the Court [be] awarded to plaintiff Sandy Hollow." *Id*., ¶¶ 140-49.

Plaintiffs allege that the Village unlawfully demanded that Plaintiffs pay certain fees related to the re-zoning application and seek $500,000 in damages and a declaratory judgment that "the Village's polices or procedures is void, ultra vires and unconstitutional as a matter of law" (*id.*, ¶ 124), and that "the Village's exaction of 'extension' and 'renewal' fees for building permits was void, ultra vires and unconstitutional as a matter of law" (*id.*, ¶ 125).

Finally, Plaintiffs assert that the Village "exceeded its authority under Village Law by purporting to impose on the plaintiff a requirement that it deed over parkland <u>and</u> pay 'impact fees[,]'" (*id.*, ¶ 128), and that the sums exacted by Defendants are "unreasonable, ultra vires, and unlawful" (*id.*, ¶ 130). In connection with this claim Plaintiffs seek a declaratory judgment "that the Village's imposition of various 'impact fees' of over $1 million, plus the requirement that plaintiff deed over 8 acres of undeveloped land was beyond the scope of their authority, and void and ultra vires as a matter of law." *Id*., ¶ 131.[6]

### D. <u>Defendants' Motion To Dismiss</u>

Defendants move, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings, dismissing this action in its entirety. Defendants argue that the Complaint does not meet the pleading standard set forth in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2007). Defs.' Mem. at 1-2. Specifically, Defendants contend that Plaintiffs fail to sufficiently allege claims under Section 1983 as there are no "specific allegations of fact indicating a deprivation of civil rights" by the

---

[6]       In the Complaint, Plaintiffs also allege a cause of action for a Mandatory Injunction requiring Defendants to release the Performance Bond. Compl., ¶¶ 132-139. As explained above, however, Defendants "concede that they have no vested right in the release of the Performance Bond" and thus have withdrawn that claim. Pls.' Mem. at 37 n.25.

Village, and no allegations showing the personal involvement of the Individual Defendants. *Id*. at 2-3. Regarding the claim for conspiracy under Section 1983, Defendants argue that under the intra-corporate conspiracy doctrine, governmental actors cannot conspire with themselves. Rather, there must be an allegation that a state actor conspired with a private party. *Id*. at 32. Defendants also assert that Plaintiffs have failed to allege sufficient facts to state any due process claim. *Id*. at 21- 31.

As to Plaintiffs' claims for fraudulent misrepresentation and aiding and abetting fraud, Defendants argue that these causes of action should be dismissed because (1) Plaintiffs failed to file a notice of claim as required under New York law; (2) the statute of limitations has expired; and (3) Plaintiffs have not satisfied the pleading requirements for a claim of fraud. *Id*. at 3- 11. Moreover, according to Defendants, because Plaintiffs cannot state a claim for fraud, the claim for rescission of the Deed should likewise be dismissed. *Id*. at 11- 12.

Defendants also argue that all of Plaintiffs' claims relating to the Village's decision to sell the eight acre parcel are barred by the terms of the Release (*id*. at 13-16), and Section 1951 of the Real Property Actions and Proceedings Law (*id*. at 16-19).[7] Moreover, according to Defendants, the instant action is not the appropriate forum for Plaintiffs' claims arising from the allegation that the Village exceeded its authority in connection with, *inter alia*, demands for payment of various fees. Rather, Defendants maintain, Plaintiffs were required to raise such claims in an Article 78 proceeding, which is governed by a four month statute of limitations, and those claims are now time barred. *Id*. at 34-36.

---

[7]     Although the parties refer to Section 1951 of the "New York Real Property Act," based upon the context of the arguments, the Court understands the parties to mean the New York Real Property Actions and Proceedings Law.

In support of the motion, Defendants filed the Declaration of Brian S. Sokoloff, counsel for Defendants [DE 36] ("Sokoloff Decl."), to which numerous exhibits are annexed [DE 36, Exs. A-V]; the Memorandum of Law in Support of Defendants' Motion to Dismiss [DE 37] ("Defs.' Mem."); and the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss [DE 39] ("Defs.' Reply Mem."). In opposition, Plaintiffs submitted a Memorandum of Law in Opposition to Defendants' Motion to Dismiss [DE 38] ("Pls.' Mem."). The Court heard oral argument on the Motion from counsel for all parties on June 24, 2010. Following oral argument, with the Court's permission, counsel for both parties submitted follow-up letters regarding the provision in the Village Code pertaining to the issuance and extension of work permits [DE 44, 45]. The Court has carefully considered all of the parties' submissions.

## III.    STANDARD OF REVIEW

Defendants move pursuant to Rule 12(c) to dismiss this action in its entirety. A motion for judgment on the pleadings pursuant to Rule 12(c) is evaluated under the same standard as a motion to dismiss under Rule 12(b)(6). *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See id*. The plaintiff must satisfy "a flexible 'plausibility standard'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), rev'd on other grounds *sub nom. Ashcroft v. Iqbal*, _ _ U.S. _ _, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955, 167 L. Ed. 2d 929

(2007).  The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss.  District courts are to first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 129 S. Ct. at 1950.  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

## IV.    ADDITIONAL MATERIALS SUBMITTED BY DEFENDANTS

Defendants have annexed twenty-one documents as exhibits to the Motion to Dismiss, which exhibits they assert should be considered by the Court because "each and every one of them was referred to in plaintiffs' complaint and thus, incorporated by reference.  Moreover, most of the exhibits concern matters of public record and matters of which judicial notice may be taken."  Defs.' Reply Mem. at 2 (citing cases).  In opposition, Plaintiffs argue that, with the exception of Exhibit A (the Complaint) and Exhibit V (the Notice of Pendency filed by Plaintiffs), the documents should not be considered because they "were not 'attached to the

13

complaint as exhibits or incorporated by reference therein,' are not 'matters of which judicial

notice may be taken,' and are not 'documents upon the terms and effect of which the complaint

relies heavily and . . . thus, rendered integral to the complaint.'"  Pls.' Mem. at 3-4 (citing cases)

(internal quotation marks omitted).  Plaintiffs further object to the Court's consideration of "the

portions of defendants' brief which quote, refer to, or discuss such documents in their

arguments[,]" or the contents of the Sokoloff Declaration.  *Id*.  The document at issue is the

Declaration of Brian Sokoloff [DE 36], counsel for Defendants, with the following exhibits:

1.  Exhibit B:  Sandy Hollow's Petition to re-zone the Property dated July 1998;

2.  Exhibit C:  excerpt from the JAC Study dated December 3, 1999;

3.  Exhibit D:  except from the Mill Pond DEIS dated November 2001:

4.  Exhibit E:  excerpt from the Mill Pond FEIS dated January 2002;

5.  Exhibit F:  Findings Statement adopted by the Village Board regarding Sandy Hollow's application to re-zone the Property dated February 28, 2002:

6.  Exhibit G:  Excerpt from the Village Oath Book;

7.  Exhibit H:  Minutes of the March 14, 2002 meeting of the Village Board;

8.  Exhibit I:  Declaration of Covenants and Restrictions entered into between Sandy Hollow and the Village dated March 14, 2002

9.  Exhibit J:  Bargain and Sale Deed entered into between Sandy Hollow and the Village dated May 3, 2005;

10.  Exhibit K:  First Amendment to the Declaration of Covenants and Restrictions executed by Sandy Hollow and the Village on June 8, 2005;

11.  Exhibit L:  Sandy Hollow's Application for the Consideration of Preliminary Layout for the Subdivision of the Land, submitted to the Village Planning Board dated May 10, 2002;

12.  Exhibit M:  Resolution of the Planning Board adopted on August 13, 2002;

14

| 13. | Exhibit N: | Village Resolution approving Final Subdivision Plat and Site Plan of Sandy Hollow, adopted on December 23, 2002; |
|-----|------------|----------------------------------------------------------------------------------------------------------------|
| 14. | Exhibit O: | building permits issued to Sandy Hollow on February 26, 2003; March 18, 2003 (reissued on June 7, 2005); and August 27, 2003; |
| 15. | Exhibit P: | letter from Building Inspector Barbara Dziorney to Sandy Hollow dated May 12, 2005; |
| 16. | Exhibit Q: | letter from Building Inspector Barbara Dziorney to Sandy Hollow dated May 128, 2005; |
| 17. | Exhibit R: | Agreement as to the Expiration and Extension of Certain Building Permits executed by Sandy Hollow and the Village on June 8, 2005; |
| 18. | Exhibit S: | Performance Bond dated June 3, 2005; |
| 19. | Exhibit T: | Release agreement executed by Sandy Hollow and the Village on June 8, 2005; and |
| 20. | Exhibit U: | Summons issued by the Village to Sandy Hollow on March 12, 2009. |

For purposes of deciding the instant motion for judgment on the pleadings,[8] the Court finds that all of the exhibits annexed to the Sokoloff Declaration are incorporated by reference in the Complaint, are documents upon which Plaintiffs solely relied in bringing this action and are integral to the Complaint, or are matters of public record. *See Toussie v. Town Board of the*

---

[8]    The Second Circuit has made clear that

[w]hen matters outside the pleadings are presented in response to a Rule 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under [Rule] 56 and afford all parties the opportunity to present supporting materials. . . . A district court, however, "is not obligated to convert a 12(b)] motion to one for summary judgment in every case in which a defendant seeks to rely on matters outside the compliant in support of a 12(b)(6) motion; it may, at its discretion, exclude the extraneous material and construe the motion as one under Rule 12(b)(6).

*Toussie*, 2010 WL 597469, at *3, n.1.  At this stage in the action, the Court, in its discretion, declines to convert Defendants' Rule 12(c) motion into a summary judgment motion, given that discovery has not been undertaken and an Answer has not been filed.  *See id.*

15

*Town of E. Hampton*, No. CIV A 08-1922, 2010 WL 597469, at *4 (E.D.N.Y. Feb. 17, 2010)

(citing *Champan v. New York State Div. for Youth*, 546l F.3d 230, 234 (2d Cir. 2008) (holding

"[o]ur review is limited to undisputed documents, such as a written contract attached to, or

incorporated by reference in the complaint"); *Parks v. Town of Greenburgh*, 2009 WL

2628516m, at *2 (2d Cir. Aug. 27, 2009) (summary order); *Pani v. Empire Blue Cross Blue

Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (courts may rely on matters of public record in deciding a

motion to dismiss under Rule 12(b)(6). . . ."); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774

(2d Cir. 1991).  On the other hand, however, the Court will not consider the Sokoloff

Declaration, except for its identification of the annexed exhibits  *See Toussie*, 2010 WL 597469,

at *5 (declining to consider affidavits submitted in support of motion to dismiss); *Roth v.

Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Cyril v. Neighborhood P'ship II Hous. Dev. Fund*,

124 Fed. Appx 26, 27 (2d Cir. 2005) (noting that the consideration of an affidavit in ruling on a

motion to dismiss would have been improper).

V.     <u>DISCUSSION</u>

A.     <u>**Section 1983 Claims**</u>

Plaintiffs allege that Defendants "have a policy, practice and custom (1) to extort,

intimidate, and otherwise extract unlawful and unauthorized payments, land, public benefits and

other monies and benefits from private applicants in exchange for granting zoning approvals and

permits[,]" and (2) "to threaten to stall, delay, and otherwise impede the progress of applications

or refuse to issue Certificates of Occupancy unless their outrageous demands are agreed upon by

the applicant[.]"  Compl. , ¶¶ 69-70.  Plaintiffs further assert that they have "a protectable and

vested property interest in the issuance of the Certificates of Occupancy for all work that was

performed in accordance with all state and local codes and requirements, in accordance with the plans, and approved by the Village Building Inspectors and Engineers." *Id.*, ¶ 71. According to Plaintiffs, as a result of Defendants' conduct, they were deprived of (1) their "right to be free from arbitrary or irrational municipal actions destructive of these interests, including the right to be free from having to give up rights and/or pay money or order to obtain Certificates of Occupancy[,]" and (2) their "substantive and procedural due process rights." *Id.*, ¶¶ 74-75.

Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Sloup v. Loeffler*, 05-CV-1766, 2008 WL 3978208, at *10 (E.D.N.Y. Aug. 21, 2008) (quoting *Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979)). *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To state a claim under Section 1983, a plaintiff must allege conduct attributable to a person acting under color of state law that deprived Plaintiff of a right secured by the Constitution of the United States. *See Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau County Police Dep't*, 53 F. Supp. 2d 347, 353 (E.D.N.Y. 1999)

(Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution") (citation omitted). Here, there is no dispute that, in connection with the facts described in the Complaint (which the Court assumes to be true for purposes of deciding a motion to dismiss), Defendants were acting under color of state law. Thus, the issue for the Court is whether Defendants' conduct deprived Plaintiffs of the rights they assert under the Fourteenth Amendment. Plaintiffs allege claims for denial of procedural and substantive due process.[9]

### 1.    Applicable Standard

To demonstrate a violation of due process rights regarding one's use of property, whether on procedural or substantive due process grounds, a plaintiff must first demonstrate that he possesses a federally protected property right to the relief sought. *See Vertical Broad., Inc. v. Town of Southampton*, 84 F. Supp. 2d 379, 391 (E.D.N.Y. 2000) (citing *Lisa's Party City v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999); *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999); *Penlyn Dev. Corp. v. Inc. Vill. of Lloyd Harbor*, 51 F. Supp. 2d 255, 261 (E.D.N.Y. 1999)). A plaintiff has a "legitimate claim of entitlement" to a particular benefit if, "absent the alleged denial of due process, there is a certainty or a very strong likelihood that the benefit would have been granted." *RRI Realty Corp. v. Incorp. Vill. of Southampton*, 870 F.2d 911, 917 (2d Cir.1989) (citation and internal quotations omitted). "It is only when such a right is established that the court may turn to a discussion of whether there has been a deprivation of that right without due process." *Vertical Broad., Inc.*, 84 F. Supp. 2d at 391. Under certain

---

[9]     In the motion to dismiss, Defendants also assert that Plaintiffs have not stated a viable takings claim. *See* Defs.' Mem. at 28-31. In their opposition papers, however, Plaintiffs state that they do not allege a takings claim. Pls.' Mem. at 34 n.24. Accordingly, the Court will not address either party's argument on this issue.

circumstances, a protected property interest may include the right to use one's land in a certain

way.  *See id*. at 391.

The Second Circuit has stated that "a constitutionally protected property interest in land

use regulation arises only if there is an entitlement to the relief sought by the property owner."

*Soundview Assocs.*, 2010 WL 2884877, at *9 (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188,

192 (2d Cir. 1994)).  Determination of whether a party has a cognizable property interest turns

on the well established principles articulated by the Second Circuit:

> [T]he question of whether an applicant has a legitimate claim of
> entitlement to the issuance of a license or certificate should depend on
> whether, absent the alleged denial of due process, there is either a
> certainty or a very strong likelihood that the application would have
> been granted. Otherwise the application would amount to a mere
> unilateral expectancy not rising to the level of a property right
> guaranteed against deprivation by the Fourteenth Amendment.

*Dean Tarry Corp. v. Friedlander*, 826 F.2d 210, 212 (2d Cir. 1987) (quoting *Sullivan v. Town of*

*Salem*, 805 F.2d 81, 85 (2d Cir. 9186) (quoting *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 59

(2d Cir. 1985)).  The Second Circuit further explained as follows:

> By that standard we [do] not intend to remove from constitutional
> protection every application for a license or certificate that could,
> under any conceivable version of facts, be the subject of
> discretionary action; a theoretical possibility of discretionary
> action does not automatically classify an application for a license
> or certificate as a mere "unilateral hope or expectation".  On the
> contrary, our standard [is] intended to be a tool capable of
> measuring particular applications to determine if the applicant had
> a legitimate claim of entitlement based on the likelihood that
> without the due process violation that application would have been
> granted.

*Dean Tarry Corp.*, 826 F.2d at 212 (quoting *Sullivan*, 805 F.2d at 85).  The Second Circuit has

instructed that the "entitlement" test be applied with "considerable rigor."  *RRI Realty Corp.* 870

F.2d at 918.  "The [strict entitlement] analysis focuses on the extent to which the deciding

authority may exercise discretion in arriving at a decision, rather than on an estimate of the

probability that the authority will make a specific decision." *Crowley v. Courville*, 76 F.3d 47, 51 (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995) (collecting cases)). "An entitlement to a benefit arises only when the discretion of the issuing agency is so narrowly circumscribed as to virtually assure conferral of the benefit." *RRI Realty Corp.*, 870 F.2d at 917. Furthermore, "[t]he issue of whether a protected property interest exists is a matter of law for the Court to decide." *Vertical Broad., Inc.*, 84 F. Supp. 2d at 391 (citing *RRI Realty*, 870 F.2d at 918).

### 2. *Application*

The basis of the alleged property right that Sandy Hollow asserts here is that it was entitled to issuance of C/Os "for all work that was performed in accordance with all state and local codes and requirements, in accordance with the plans, and approved by the Village Building Inspectors and Engineers." Compl., ¶ 71. Defendants move for dismissal of the Section 1983 claims on the grounds that Plaintiffs did not have cognizable property interest in the issuance of the C/Os and therefore were not deprived of any type of due process. Defs.' Mem. at 21-28. Based upon a careful review of the record presented to date, including the Village Code,[10] the Court finds that Defendants have not met their burden of establishing that they had a constitutionally protected property interest in the issuance of the C/Os.

At the outset, the Court notes that according to the Complaint, following the execution of certain agreements between the Village and Sandy Hollow on June 8, 2005, the Village issued the C/Os at issue here on the same date. Compl., ¶ 54; Defs.' Reply Mem. at 9. Thus, the gravamen of Plaintiffs' claim is actually that the Village did not issue the C/Os immediately

---

[10]     In light of the fact that such information is public information, the Court taken judicial notice of the Village Code in considering the Motion to Dismiss.

upon Plaintiffs request and only after Plaintiffs fulfilled certain obligations mandated by the

Village -- not that the Village did not issue the C/Os at all.

In support of their motion to dismiss, Defendants assert that Plaintiffs were not entitled to

issuance of the C/Os because they were not in "full compliance with Village law . . . thus

negating any property interest in [the C/Os]." Defs.' Mem. at 25. Defendants maintain that at

the time Plaintiffs requested issuance of the C/Os, they were not in compliance with certain

provisions of the Village Code, including that Plaintiffs had not posted a bond and the building

permits had expired. Defs.' Mem. at 24-5; Defs.' Reply Mem. at 10. Defendants further point

out that Plaintiffs "do not allege that they actually submitted a final survey and application for

the C/O's; instead, they merely aver that Sandy Hollow 'wrote to the Village advising of its

projected closing schedule.'" Defs.' Mem. at 25 (quoting Compl., ¶ 41).

Section 176-119.4 of the Port Washington North Village Code, entitled "Certificates of

Use and Occupancy," provides that "[t]he Building Inspector shall not issue any certificate of use

and occupancy unless and until the construction of the buildings and facilities shall have been in

full compliance with all applicable laws, ordinances, rules, codes, regulations, and stipulations."

Section 68-12 of the Code provides that a certificate of occupancy "certif[ies] that such building

conforms substantially to the permit and the requirements of law applying to buildings of its

class and kind." Thus it is clear that under the Village Code, a certificate of occupancy signifies

that such building is in compliance with several applicable laws and rules. Section 176-68 of the

Village Code, entitled "Bond required," provides the following:

> Prior to the commencement of any work pursuant to this article, the
> applicant shall file, with the Village Clerk, labor, material, and
> performance bonds, in such amounts and in such forms as shall be
> approved by the Village Building Inspector and the Village Attorney
> respectively, to insure the completion of all roads, sidewalks,
> stormwater drainage, sanitary sewage transmission and disposal,

> electricity, gas, lights, and telephone services, and equipment and
> other utilities and all recreation areas, parks, swimming pools, tennis
> courts, and other amenities, as set forth in the plan for the site, within
> three years from the issuance of said bonds, together with an easement,
> in such form as shall be approved by the Village Attorney, granting
> permission to the Village to enter upon the site to complete such work.
> The said three-year period may be extended by resolution of the Board
> of Trustees with the consent of the surety that issued the bond.

Furthermore, on December 23, 2002, the Village Planning Board adopted a Resolution

"Approving Final Subdivision Plat and Site Plan of Sandy Hollow Associates, LLC," which

included the following provision: stating as follows:

> In accordance with the recommendation of the Village Engineer, prior
> to the implementation of the project contemplated by this application
> by the sale or other transfer of title to any Units and prior to the
> issuance of any building permit with respect to any building or
> structure at the Subject Premises, the Applicant or owner shall furnish
> to the Village labor, material and performance bonds in form and
> substance satisfactory to the Village Engineer and Village Attorney
> issued by a surety satisfactory in all respects to the Village, in the
> principal amount of $5,346,760, to insure the performance of the items
> of work identified on the scheduled dated December 16, 2002

Sokoloff Decl., Ex. N. In the Complaint, Plaintiffs allege that they obtained a Performance Bond

for Mill Pond Acres on June 8, 2005. Compl., ¶ 53. Plaintiffs do not allege that they had

previously obtained a Performance Bond or that they had such Bond in March 2005 when Sandy

Hollow "wrote to the Village advising it of its projected closing schedule, to avoid any delays in

the issuance of the C/O's." Compl., ¶ 41.[11] Based upon the allegations set forth in the

Complaint, the Court concludes that at that the time they initially requested issuance of the C/Os

in approximately March 2005, Plaintiffs did not have a Performance Bond. According to the

Village, the C/Os were not granted in March 2005 because Plaintiffs were not in compliance

---

[11] In their letter submitted after oral argument, Plaintiffs assert that in February 2005 Sandy
Hollow "request[ed] that Certificates of Occupancy be issued after it completes approximately
100 units of its phased construction project." DE 45 at 2. Plaintiffs cite to Paragraph 41 in
support of this point and therefore, the Court relies upon the allegation as it was set forth in the
Complaint.

with the provision of the Village Code and the Village Resolution requiring a Performance Bond. The Court finds, therefore, that Plaintiffs have not shown entitlement to earlier issuance of the C/Os. *See RRI Realty Corp.*, 870 F.2d at 917 (plaintiff has a "legitimate claim of entitlement" to a particular benefit if, "absent the alleged denial of due process, there is a certainty or a very strong likelihood that the benefit would have been granted"); *Sullivan*, 805 F.2d at 85. [12]

In opposition, Plaintiffs argue that Defendants' "attempt to show that there were other 'requirements' that had not been met at the time plaintiff sought the C/Os in an effort to show that the building inspect[or] had discretion to deny it" are "improper on a motion to dismiss, since the Court must deem the allegations of the Complaint as true, and the Complaint alleges that all work 'was performed in accordance with all state and local codes and requirements, in accordance with the plans, and approved by the Village Building and Inspectors and Engineers." Pls.' Mem. at 29 (quoting Compl.,¶¶ 39, 71). In making this statement Plaintiffs misapprehend the pleading requirements. In *Twombly*, the Supreme Court stated as follows:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted). Subsequently, in *Iqbal*, the Supreme Court instructed that in analyzing a motion to dismiss, the court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, _ _ U.S. _ _, 129

---

[12] In light of the Court's conclusion here, it is unnecessary to address the validity of Plaintiffs' building permits at the time they requested issuance of the C/Os. *See* Defs.' Mem. at 24-25; Defs.' Reply Mem. at 10; Pls.' Mem. at 30-31; DE 45, 46.

S.Ct. 1937, 1950 (2009).  Here, Plaintiffs' bald assertion that all of the work was performed in accordance with the myriad requirements is a conclusory statement that, under the standards set by *Twombly* and *Iqbal*, without any factual substantiation, is not sufficient to raise a right to relief above the speculative level.

For the foregoing reasons, I find that Plaintiffs have not established that they have a constitutionally protected property interest in the issuance of the C/Os.  "Because the court considers the property right issue as a threshold matter, a civil rights due process claim may be rejected without the necessity of exploring whether the local authority has acted in an arbitrary manner."  *See Vertical Broad., Inc.*, 84 F. Supp. 2d at 392 ("Specifically, in cases where there is no 'entitlement,' and therefore no protected property interest, it will matter not how the regulator's actions are characterized.").  Therefore, "[t]he case may be dismissed at the outset based upon the lack of a constitutionally protected property interest."  *Id*. (citing *RRI Realty*, 870 F.2d at 918).  Thus, in light of my finding that Plaintiffs lack a protected property interest in the issuance of the C/Os, I respectfully recommend to Judge Feuerstein that Plaintiffs' First Cause of Action under Section 1983 be dismissed.

**B.      Section 1983 Conspiracy Claims Against Individual Defendants**

Plaintiffs allege that the Individual Defendants "conspired with each other to deprive Plaintiffs of their constitutional rights" to the issuance of the C/Os.  As described above, Plaintiffs did not possess a property right in issuance of the C/Os, and Plaintiffs do not allege any other deprivation of rights under Section 1983.  Accordingly, Plaintiffs' claim for conspiracy under Section 1983 cannot survive a motion to dismiss.  *See Dean Tarry Corp. v. Friedlander*, 826 F.2d 210, 213-14 (2d Cir. 1987) (affirming dismissal of 1983 conspiracy claim because

plaintiff "did not possess a property right in having its site plan approved" and did not point to any "other deprivation sufficient to maintain a damages action under section 1983). Notwithstanding this conclusion, the Court will address the merits of Plaintiffs' 1983 conspiracy claim.

In order to survive a motion to dismiss on a Section 1983 conspiracy claim, Plaintiffs must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *See Ciambriello v. County of Nassau*, 292 F.2d 307, 324-25 (2d Cir. 2002) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). "In addition, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello*, 292 F.2d at 325 (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) (citations, internal quotation marks, and internal alterations omitted)).

Defendants argue for dismissal of Plaintiffs' conspiracy claims on the basis of, *inter alia*, the intra-corporate conspiracy doctrine. Defs.' Mem. at 32. Under the intra-corporate conspiracy doctrine, the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other. *See Varricchio v. County of Nassau*, 08-CV-4526, 2010 WL 986577, at *17 (E.D.N.Y. Mar. 17, 2010) (citing *Farbstein v. Hicksville Pub. Library*, 254 Fed. App'x 50, 50-51 (2d Cir. 2007) (affirming dismissal of conspiracy complaint "at the first step of analysis" because complaint made reference only to employees of same corporation); *Rini v. Zwirn*, 886 F.

Supp. 270, 292 (E.D.N.Y. 1995) ("Intracorporate immunity has also been extended to the context of conspiracies between a public entity and its employees."); *accord Cameron v. Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003); *Quinn v. Nassau County Police Dep't*, 53 F. Supp. 2d 347, 359-60 (E.D.N.Y. 1999). Here, Plaintiffs do not dispute that the Individual Defendants -- Robert S. Weitzner, Steven Cohen, Sherman Scheff and Michael Schenkler, all of whom are sued "individually" and in their respective positions as Mayor, Board Members and Building Inspector -- are all employees of a single municipal entity -- the Village of Port Washington North. As such, these Individual Defendants are "legally incapacle of conspiring with each other." *Varricchio*, 2010 WL 986577, at *17. Accordingly, the Section 1983 conspiracy claims against the Individual Defendants are barred by the intra-corporate conspiracy doctrine.

Plaintiffs argue that an exception to the intra-corporate conspiracy doctrine applies when individuals within a single entity are pursing personal interests wholly separate from the entity and that they should be permitted to conduct discovery in order to ascertain the personal interests that the Individual Defendants were pursuing. Def.'s Mem. at 38-39. Plaintiffs are correct about the existence of this exception to the intra-corporate doctrine. However, "the doctrine's applicability depends upon whether the individual defendants were acting within the scope of their official duties or pursuing their independent personal interests." *Nassau County Employee "L" v. County of Nassau*, 345 F. Supp. 2d 293, 305 (E.D.N.Y. 2004). With respect to the Individual Defendants, the Complaint alleges that "[t]he Mayor and Board of Trustees are policymakers for the Village and govern the Village of Port Washington North [and] [t]he actions, decisions, customs, and policies of the defendants constitute and reflect official Village policy[,]" and such policies deprived Plaintiffs of certain constitutional rights. Compl., ¶¶ 67-78.

Plaintiffs further allege that "each of the individual defendants conspired with each other to deprive plaintiffs of their constitutional rights as alleged more fully above." *Id*., ¶ 84. However, apart from paragraphs in the Complaint setting forth the Section 1983 causes of action (from which the preceding quotations are taken), the only references to the Individual Defendants are in the section entitled "Parties" (in which each person is identified by name and title) (*id*., ¶¶ 17-21), and a quotation from an article written by Defendant Schenkler in the September 2008 Village newsletter regarding the proposed sale of the eight acres (*id*., ¶ 63). Taking the allegations set forth in the Complaint as true and drawing all reasonable inferences in Plaintiffs' favor, the Court understands Plaintiffs to be alleging that the Individual Defendants, who were elected to their positions as Mayor and members of the Board of Trustees[13] in April 2005 (after the parties entered into the Deed pursuant to which Plaintiffs transferred title to the eight-acre Parcel) conspired to deprive Plaintiffs of their constitutional rights because they required Plaintiffs to renew the building permits before the C/Os would be issued. Actions with regard to the zoning, issuance of C/Os, and management of land owned by the Village falls within the Individual Defendants' official duties as Mayor and members of the Board of Trustees. Furthermore, there is not a single allegation in the Complaint indicating that any action taken by the Individual Defendants was done outside the scope of their official duties or while pursuing independent personal interests. *Nassau County Employee "L"*, 345 F. Supp. 2d at 305 (finding exception to intra-corporate conspiracy doctrine inapplicable because the complaint did not allege that the individual defendants, who were municipal employees, acted outside the scope of their employment or that such actions "were separate and apart from [his] official duties");

---

[13] The Court has no knowledge of when Defendant Robert Barbach became Building Inspector, as he is not mentioned at all in the Complaint. Further, the May 2005 letters from the Building Inspector informing Plaintiffs that they were required to renew the permits were from Barbara Dziorney, Building Inspector. *See* Sokoloff Decl., Exs. P, Q.

*Salgado v. City of New York*, 00 Civ. 3667, 2001 WL 290051, at *9 (S.D.N.Y. Mar. 26, 2001)

(granting motion to dismiss conspiracy claim where pleading "merely states the legal standard

[for the personal stake exception] without alleging specific facts giving rise to an inference that

the standard has been satisfied"). Accordingly, I find that the intra-corporate conspiracy doctrine

applies here to bar Plaintiffs' Section 1983 conspiracy claims against the Individual Defendants.

Additionally, the Complaint does not sufficiently allege the personal involvement of the

Individual Defendants in order to withstand a motion for judgment on the pleadings. To state a

claim for individual liability under § 1983, "a plaintiff must demonstrate a defendant's *personal*

involvement in the alleged discrimination in order to establish a claim against such defendant in

his individual capacity." *Soundview Assocs. v. Town of Riverhead*, 09-4095, 2010 WL 2884877,

at *17 (E.D.N.Y. Jul. 14, 2010) (quoting *Valenti v. Massapequa Union Free Sch. Dist.*, No. 09-

CV-977, 2010 WL 475203, at *8 (E.D.N.Y. Feb. 5, 2010) (citation omitted) (emphasis in

original)); *see Iqbal*, 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to . . . § 1983

suits, a plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution."); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.

1987) ("Absent some personal involvement by [a defendant] in the allegedly unlawful conduct

of his subordinates, he cannot be held liable under section 1983." (citation omitted)); *see also*

*Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995). "[M]ere bald assertions and conclusions of

law do not suffice." *Davis v. County of Nassau*, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005)

(citation and internal quotation omitted).

Moreover, as the Second Circuit has repeatedly stated, "complaints containing only

conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to

deprive the plaintiff of his constitutional rights are properly dismissed. . . ." *Ciambriello*, 292

F.2d at 325 (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).  As

discussed above, the Complaint does not state a single allegation with regard to the roles of the

Individual Defendants in the alleged conspiracy.  Rather, the Complaint states in conclusory

fashion that the Individual Defendants were policy makers who engaged in a conspiracy to

deprive Plaintiffs of constitutionally protected property rights.  Such conclusory pleading is not

sufficient to state a claim under Section 1983.  Accordingly, I respectfully recommend to Judge

Feuerstein that Plaintiffs' Section 1983 conspiracy claim (Count Two) be dismissed as against

the Individual Defendants.[14]

**C.  Plaintiffs' Fraud Claims**

In the second cause of action for fraudulent inducement and misrepresentation, Plaintiffs

allege that in connection with their petition to re-zone the Property, Defendants made knowingly

false and material misrepresentations to Plaintiffs regarding the "significant adverse

environmental impact" that would result from the re-zoning and development of the Property,

and the consequent need for Plaintiffs to deed the eight acres to the Village for use as

"permanent open space[,]" and that but for such representations, Plaintiffs would not have

transferred ownership of the Parcel.  Compl., ¶¶ 87-98.  In the third cause of action for aiding

and abetting fraud, Plaintiffs assert that the Individual Defendants had knowledge of this

fraudulent conduct and "participated and furthered the aforesaid fraudulent acts and scheme. . . ."

*Id*., ¶¶ 99-102.  The crux of the Plaintiffs' allegations is that Defendants were engaged in a

"fraudulent scheme to sell the 8-acre parcel to a developer for $12 million dollars for an

---

[14]     In light of the Court's recommendation of dismissal, it is not necessary to address
whether the Individual Defendants are entitled to Qualified Immunity, as asserted by Defendants
(Defs.' Mem. at 33-34) and opposed by Plaintiffs (Pls.' Mem. at 39-41).

incalculable profit as they paid nothing for the property, in violation and repudiation of its own

Declaration of Restrictive Covenants, its own SEQRA Findings, and the representations made to

Sandy Hollow, on which Sandy Hollow relied." Pls.' Mem. at 5 (citing Compl., ¶¶ 88-102).

Defendants move to dismiss these claims on the grounds that (1) Plaintiffs did not file a notice of

claim prior to filing this action, as required by New York State statute; (2) the actions are time

barred; and (3) Plaintiffs have not established a prima face case for their claims. Defs.' Mem.

at 3.

As a "condition precedent" to commencing a tort action against a municipality, such as

the Village of Port Washington North, or its officers, agents, or employees, New York General

Municipal Law Section 50-e requires plaintiffs to file a notice of claim within 90 days after the

claim arises. *See Olsen v. County of Nassau*, CV 05-3623, 2008 WL 4838705, at *1 (E.D.N.Y.

Nov. 4, 2008) (citing *Chesney v. Valley Stream Union Free Sch. Dist.*, No. 05 Civ. 5106, 2006

WL 2713934, at *8 (E.D.N.Y. Sept. 22, 2006). Specifically, New York General Municipal Law

Section 50-i provides, in relevant part, as follows:

> No action or special proceeding shall be prosecuted or maintained
> against a . . . village . . . for personal injury, wrongful death or
> damage to real or personal property alleged to have been sustained
> by reason of the negligence or wrongful act of such . . . village . . .
> unless, (a) a notice of claim shall have been made and served upon
> the city, county, town, village, fire district or school district in
> compliance with section fifty-e of this chapter.

N.Y. Gen. Mun. Law § 50-i(1). In turn, Section 50-e provides the following:

> in any case founded upon tort where a notice of claim is required
> by law as a condition precedent to the commencement of an action
> or special proceeding against a public corporation, as defined in
> the general construction law, or any officer, appointee or employee
> thereof, the notice of claim shall comply with and be served in
> accordance with the provisions of this section within ninety days
> after the claim arises; except that in wrongful death actions, the

> ninety days shall run from the appointment of a representative of
> the decedent's estate.

*Id.*, § 50-e. "The general rule is that in a federal court, state notice-of-claim statutes apply to

state law claims." *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 92 (W.D.N.Y. 2009)

(alterations omitted) (citing *Felder v. Casey*, 487 U.S. 131, 151 (1998)). Further, "notice of

claim requirements apply equally to state tort claims brought as pendent claims in a federal civil

rights action." *Id.* (citing *Warner v. Village of Goshen Police Dep't.*, 256 F. Supp. 2d 171, 175

(S.D.N.Y. 2003); *accord Jones v. Nassau County Sheriff Dep't.*, 285 F. Supp. 2d 322, 327

(E.D.N.Y. 2003)). Plaintiff bears the burden of pleading and proving compliance with the

requirements of Section 50-i. *See Christian*, 649 F. Supp. 2d at 92 (citing *Panzeca Inc. v. Bd. of

Ed. Union Free Sch. Dist. No. 6*, 29 N.Y.2d 508, 323 N.Y.S.2d 978 (1971); *Stoetzel v.

Wappingers Cent. Sch. Dist.*, 166 A.D.2d 643, 644, 561 N.Y.S.2d 71 (2d Dep't. 1990)). "Notice

of claim requirements are generally strictly construed, and failure to comply with the

requirements typically results in dismissal due to failure to state a cause of action." *Olsen*, 2008

WL 4838705, at *1 (citing *Hardy v. New York City Health and Hosp. Corp.*, 164 F.3d 789, 793-

94 (2d Cir. 1999)).

　　　　In the instant case, Plaintiffs concede that they have not filed notices of claim upon the

Village or any of the Individual Defendants. However, Plaintiffs assert that under the statute, the

notice of claim requirement is limited to "claims involving 'personal injury, wrongful death, or

damage to real or personal property.'" Pls.' Mem. at 6 (emphasis in original). Thus, according

to Plaintiffs, a cause of action for fraud, such as the present case, does not require a notice of

claim to be served. *Id.*

Under New York law, and contrary to Plaintiffs' assertions here, Plaintiffs were required to serve a notice of claim on the Village and on the Individual Defendants. A review of the case law makes clear that the notice-of-claim requirement is applicable in myriad torts alleged against municipalities and their employees. *See*, *e.g.*, *Christian*, 649 F. Supp. 2d at 92 (dismissing common law fraud claims against Town for "having failed to plead or prove compliance with the notice of claim provision"); *Razzano v. County of Nassau*, 599 F. Supp. 2d 345, (E.D.N.Y. 2009) (dismissing claims for conversion and replevin as against Nassau County and County police officers for failure to plead filing of timely notice of claim); *Crippen v. Town of Hempstead*, 07-CV-3478, 2009 WL 803117, at *15-16 (E.D.N.Y. Mar. 25, 2009) (dismissing claims for fraud and breach of fiduciary duty as against Town of Hempstead for failure to file notice of claim); *Van Cortlandt v. Westchester County*, 07 Civ 1783, 2007 WL 3238674, at *8 (S.D.N.Y. Oct. 31, 2007) (dismissing claims for malpractice and fraud as against Westchester County and Westchester County Health Care Corporation and employees for failure to file notice of claim); *Guoba v. Sportsman Props. Inc.,* 03-CV-5039, 2007 WL 2903900, at *24 (dismissing plaintiffs' negligence claims for failure to comply with notice of claim requirement).[15]

The cases cited by Plaintiffs in support of their position that "a cause of action for fraud does not require a notice of claim as a condition precedent to suit" (Pls.' Mem. at 6) are inapplicable here. In *Hoydal v. City of New York*, 154 A.D.2d 345, 545 N.Y.S.2d 823 (N.Y.

---

[15]    Although Plaintiffs have not raised this issue, the Court notes that the public interest exception to the notice of claim requirement is inapplicable here. *See Crippen*, 2009 WL 803117, at *16 (finding that "a private civil rights lawsuit" brought against the town under Section 1983 "has not been brought in the public interest") (citing *Turner v. County of Suffolk*, 955 F.Supp. 175, 177 (E.D.N.Y. 1997) (finding that although plaintiffs' recovery might have an effect on others' interests, "we do not think such an effect would be of any greater value to the public than any other award to civil rights plaintiffs")). Moreover, this Court lacks jurisdiction to consider an application for leave to serve late notice. *See Crippen*, 2009 WL 803117, at *17 (citing cases).

App. Div. 2d Dep't 1989), the court found that the "the complaint was based solely upon the provisions of the contract of sale for the purchase of real property[,]" and therefore, "no notice of claim was required to be served upon the defendant under General Municipal Law § 50-e." *Hoydal*, 154 A.D.2d at 346, 545 N.Y.S.2d at 824-25.  In *Guinyard v. City of New York*, 800 F. Supp.1083 (E.D.N.Y. 1992), the municipal defendants moved for dismissal of plaintiffs' fraud and misrepresentation claims for failure to file notice of claim in accordance with Section 50-e. The court found that in light of plaintiffs' position, taken in opposition to defendants' summary judgment motion, that "the claims arise in contract[,]" plaintiffs were not required to file a notice of their claim.  *Guinyard*, 800 F. Supp. at 1090.  In *Creative Waste Management, Inc. v. Capitol Environ. Servs., Inc.*, 429 F. Supp. 2d 582 (S.D.N.Y. 2006), defendant City of New Rochelle moved for summary judgment as to plaintiff's claims for, *inter alia*, fraud, fraudulent inducement and negligent misrepresentation on the grounds that plaintiff failed to file a notice of claim as required under the parties' contract and Section 50-e.  The court found that plaintiff had complied with the contractual notice of claim requirement, but had not sufficiently alleged compliance with the statutory requirement.  *Creative Waste Mgmt.*, 429 F. Supp. 2d at 606.  The court deemed plaintiff's motion to amend the complaint to allege compliance with Section 50-e moot in light of its determination that "it is not necessary [to serve notice of claim] when alleging fraud *and* breach of contract against a municipal corporation."  *Id*. at 606 (citing *Guinyard*, 800 F. Supp at 1090).[16]  In the instant case, there is no contention that Plaintiffs' fraud

---

[16]     The court in *Creative Waste Management* cites to *Guinyard* for the same language for which *Guinyard* cites to *Hoydal*, which is the proposition that "[a]lthough fraud and misrepresentation are traditionally considered torts, New York courts have held that a notice of claim under § 50e is not necessary when alleging fraud and breach of contract against a municipal corporation."  *Guinyard*, 800 F. Supp. at 1090 (citing *Hoydal*, 154 A.D.2d at 346, 545 N.Y.S.2d at 824).  In light of the fact that the Court in *Hoydal* specifically found that Section

claims are contractual in nature and therefore, *Hoydal*, *Guinyard* and *Creative Waste Management* are inapposite here. In light of the foregoing analysis, the Court finds that Plaintiffs were required to serve upon the Village a notice of claim for their fraudulent misrepresentation claims.

Plaintiffs were also required to serve notice of claim on the individual Defendants. Section 50-e requires service of a notice of claim for suits brought against a municipal employee only where the municipality is required to indemnify the employee. *See Van Cortlandt*, 2007 WL 3238674, at *8 (citing, *inter alia*, *Zwecker v. Clinch*, 279 A.D.2d 572, 720 N.Y.S.2d 150, 152 (2d Dep't 2001)). The obligation to indemnify turns on whether the individual defendant was acting within the scope of his employment when he committed the allegedly illegal conduct. *Id.* "Moreover, to prevail on its assertion that the municipality is not required to indemnify the defendant municipal employee, the plaintiff is required to offer some evidence establishing that the defendant's alleged illegal actions occurred outside the scope of employment." *Id.* In making this determination, the court may rely on the allegations contained in plaintiffs' complaint. *See Olsen*, 2008 WL 4838705, at *4 (citing *Costabile v. County of Westchester*, 485 F. Supp. 2d 424, 432 (S.D.N.Y. 2007) ((finding service of a notice of claim unnecessary for claims against individual defendants in their individual capacities where according to the allegations in the Amended Complaint, "the conduct of defendants appears to fall outside the scope of their employment").

---

50-e was inapplicable because "[t]he essence of plaintiffs' claim sounds in contract, not tort[,]" this Court respectfully suggests that the Court in *Creative Waste Management* misapplied *Guinyard*, which, in turn, had misapplied *Hoydal*. In any event, the circumstances of *Guinyard* and *Creative Waste Management* were analogous to *Hoydal* in that the respective plaintiffs' claims sounded in contract rather than tort. For that reason, all three cases are inapplicable here.

In the instant action, as discussed above, "there is nothing in the . . . complaint that could be construed as an allegation against defendant[s] in [their] individual capacit[ies]." *Olsen*, 2008 WL 4838705, at *4 (quoting *Henneberger v. County of Nassau*, 465 F.Supp.2d 176, 1999 (E.D.N.Y. 2006). Rather, all of Plaintiffs' allegations pertain to conduct by the Individual Defendants while serving as Mayor, member of the Board or Building Inspector for the Village and thus, Plaintiffs' claims against the Individual Defendants "relate solely to their status as County employees." *Id.*; *see also Van Cortlandt*, 2007 WL 3238674, at *8. In light of these findings, the Court concludes that Plaintiffs were in fact required to serve notices of claim upon the Village and the Individual Defendants in connection with the fraud claims alleged in this action.

In light of my findings that the notice of claim requirement is applicable here, I respectfully recommend to Judge Feuerstein that Plaintiffs' claims for fraudulent misrepresentation and aiding and abetting fraud (Counts 3 and 4) be dismissed as against all Defendants.[17]

## D.      **Plaintiffs' Claim For Rescission**

In Count Five, Plaintiffs allege that based upon Defendants' purported "fraudulent conduct," Plaintiffs are "entitled to rescission of the Bargain and Sale Deed transferring title of the 8 acres to the Village. . . ." Compl., ¶ 104. The crux of Plaintiffs' argument is that the Deed should be rescinded because that agreement, pursuant to which Plaintiffs transferred the eight-acre parcel to Defendants in exchange for $10 (Sokoloff Decl., Ex. J), was induced by fraud.

---

[17]      In light of the Court's recommendation, it is unnecessary for the Court to determine whether Plaintiffs' fraud claims are barred by the statute of limitations or whether Plaintiffs have sufficiently pleaded a prima facie case for their third and fourth causes of action.

Defendants move to dismiss the rescission claim on the grounds that (1) Plaintiffs have not adequately pleaded a cause of action for fraud, which is a necessary element of a rescission claim; and (2) the claim is untimely since Plaintiffs allege they learned of the Village's intention to sell the land in 2005, but did not commence this action until 2009 and therefore did not initiate this action "promptly after the discovery of the fraud" and without unreasonable delay. Defs.' Mem. at 11-2.

A claim for rescission of a contract must be based upon either mutual mistake or fraudulently induced unilateral mistake. *Goldberg v. Manufs. Life Ins. Co.*, 242 A.D.2d 175, 179, 672 N.Y.S.2d 39, 42 (NY App. Div. 1st Dep't 1998). Here, there is no allegation of mistake. Rather, Plaintiffs' fifth cause of action for rescission is based entirely on the conduct alleged in Plaintiffs' fraud claims (Counts Three and Four). Thus, if the claims for fraud cannot stand due to a fatal procedural defect, then the claim for rescission likewise cannot stand. *See Goldberg*, 242 A.D.2d at 179, 672 N.Y.S.2d at 42-43 (finding that plaintiffs could not "avail themselves of fraudulent inducement as the basis of this cause of action as against [defendant] in light of the court's dismissal of the fraud claims as against that defendant and, therefore, dismissing claim for rescission").

Accordingly, in light of my previous recommendation that the fraud claims be dismissed for failure to file a notice of claim, I also respectfully recommend to Judge Feuerstein that Plaintiffs' Fifth Cause of Action for rescission be dismissed.[18]

---

[18]     In light of the Court's recommendation, it is unnecessary to make a determination as to the timeliness of Plaintiffs' rescission claim.

**E.**     **Plaintiffs' Claims Related To Sale Of The Land**

Plaintiffs Sixth, Seventh and Eleventh Causes of Action are challenges to the Village's proposed sale of the Parcel.  First, Plaintiff seek an Order enjoining the Village from, *inter alia*, "[s]elling, transferring or using all or any portion of the 8-acre parcel for development, whether commercial or residential, in a manner that is contrary to or inconsistent with the specific uses and purposes prescribed by the Village . . . in its SEQRA Findings and Planning Resolutions . . . ."  Compl., ¶¶ 105-106.  Second, Plaintiffs seek an Order declaring that "any proposed transfer or sale of the 8-acre parcel is void and invalid as a matter of law[,]" on the grounds that selling the Parcel would constitute a violation of the SEQRA Findings and the FEIS and, therefore, before proceeding with such sale, the Village is required under SEQRA to prepare a Supplemental  Environmental Impact Statement.  *Id*., ¶¶ 107-111.  Third, Plaintiffs seek, as an alternative to rescission of the Deed, an Order enforcing the Declaration of Restrictive Covenants which, Plaintiffs assert, Defendants have violated by attempting to sell the Parcel.  *Id*., ¶¶ 140-149.

Defendants move to dismiss Plaintiffs' allegations "asserting a claim to title or challenging the sale of the 8-acre parcel" on the grounds that such claims are barred by the Release entered into between Sandy Hollow and the Village on June 8, 2005.  Defs.' Mem at 13; Sokoloff Decl., Ex. T.  In opposition, Plaintiffs argue that (1) the Release was procured by duress and is therefore invalid (Pls.' Mem. at 18); and (2) even if valid, the language of the Release is narrow and pertains only to claims that the Parcel "had been put up for sale but Sandy Hollow

was not selected as the "winning bidder" (Pls.' Mem. at 19).[19]  Thus, Plaintiffs maintain, the

Release does not bar their claims in the instant case where they are challenging the sale of the

Property to any third party "as a violation of the Declaration of Restrictive Covenants, a violation

of the Village SEQRA Findings, and as otherwise improper and unlawful since, *inter alia*, a

Supplemental Environmental Impact Statement ("SEIS") was not performed.  *Id* at 19.  For the

reasons that follow, the Court finds these arguments to be without merit and concludes that the

Release should be enforced.

### 1.  *Enforceability of the Release*

"It is well established under New York law that a valid release which is clear and

unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as

a private agreement between parties."  *2 Broadway LLC*, 2001 WL 410074, at *6 (quoting

*Berman v. Parco*, 986 F.Supp. 195, 208 (S.D.N.Y. 1997) (internal quotation marks and citations

omitted)); *Booth v. 3669 Delaware*, 92 N.Y.2d 934, 935, 680 N.Y.S.2d 899 (N.Y. 1998) ("a clear

and unambiguous release . . . should be enforced according to its terms").  A release is therefore

binding on the parties absent a showing of fraud, duress, undue influence, or another valid legal

defense.  *See 2 Broadway LLC*, 2001 WL 410074, at *6 (*citing Worth Constr. v. ITRI Masonry

Corp.*, No. 98 Civ. 2536, 2001 WL 209924, at *5 (S.D.N.Y. Feb. 21, 2001) ("Since a release is a

---

[19]     Plaintiffs initially object to the Court's consideration of the Release in connection with
the instant motion because such agreement was not annexed as an exhibit to the Complaint.
However, as discussed above, the Complaint specifically refers to the Release (*see* Compl., ¶¶
51, 53, 54), and therefore, the Court will consider the agreement on this motion.  *See 2 Broadway
LLC v. Credit Suisse First Boston Mortgage Capital LLC*, No. 00 Civ. 5773, 2001 WL 410074,
at *5 (S.D.N.Y. Apr. 23, 2001) (considering release agreements included as part of defendant's
motion to dismiss, even though such agreements were not annexed to the Complaint, because
"the Complaint explicitly references them . . . and therefore the agreements may be considered
on this motion") (citation omitted).

'jural act of high significance without which the settlement of disputes would be rendered all but

impossible . . . the traditional bases for setting aside written agreements, namely duress,

illegality, fraud or mutual mistake, must be established or else [it] stands'") (alterations in

original) (quoting *Mangini v. McClurg*, 24 N.Y.2d 556, 563, 301 N.Y.S. 2d 508 (1969)).

In the instant case, the Release provides, in relevant part, as follows:

> In consideration of the sum of Ten ($10) Dollars and other good
> and valuable consideration . . . by and on behalf of The Village of
> Port Washington North and its Trustees and Officers (collectively
> the "Releasees") to and for the benefit of Sandy Hollow
> Associates, LLC and its Members (collectively the "Releasors" . . .
> the Releasors do hereby jointly and severally release the Releasees
> from (i) all claims now existing or which have accrued through the
> date of this Release relating to that certain parcel of land heretofore
> conveyed by Sandy Hollow…and (ii) from any claim by the
> Releasors accruing after the date of this Release that the Property
> has been sold by the Releasees and that the Releasors have not
> been selected by the Releasees as the purchaser of the
> property…This release shall be for the sole and exclusive benefit
> of the Releasees, and shall be binding solely upon the Releasors…

Sokoloff Decl., Ex. T.  Under the terms of this agreement, Sandy Hollow released the Village

from any claim that (1) existed or accrued up to and including June 8, 2005 (the date the Release

was executed), and (2) accrued following June 8, 2005.  The apportionment of the sentence into

(i) and (ii) indicates the two time periods to which the Release applies. The next part of the

sentence indicates the nature of the claims released by Sandy Hollow -- "that the Property has

been sold by the [Village] and that [Sandy Hollow] ha[s] not been selected by the [Village] as

the purchaser of the property. . . ."  In other words, Sandy Hollow released the Village from any

claim arising from the Village's sale of the eight-acre parcel to any party other than Sandy

Hollow.  In opposition to the motion to dismiss, Sandy Hollow argues as follows:

> Sandy Hollow released any future claim that it had that the Property had been put up for sale but Sandy Hollow was not selected as the winning bidder. In this action, Sandy Hollow does <u>not</u> complain that it was not selected as the purchaser of the Property, but rather, challenges the Property to <u>any</u> third party as a violation of the Declaration of Restrictive Covenants, a violation of the Village SEQRA Findings and as otherwise improper and unlawful since, *inter alia*, a Supplemental Environmental Impact Statement ("SEIS") was not performed. The limited release signed by Sandy Hollow does not bar these independent claims.

Pls.' Mem. at 19 (emphasis in original). Plaintiffs further argue that the use of the conjunctive "and" in the portion referring to the nature of the claims to be released -- "any claim by the Releasors accruing after the date of this Release that the Property has been sold by the Releasees *and* that the Releasors have not been selected by the Releasees as the purchaser of the property" (emphasis added) -- "means that the release does not bar any claims other than a claim in which <u>both</u> conditions are being challenged, *i.e.* a claim that the Village put the property up for sale <u>and</u> that Sandy Hollow was not selected as the winning bidder." *Id*. at 19 n.15 (citing cases).[20]

Addressing the second argument first, the Court does not understand there to be a dispute that the Release pertains to a situation where the Village sells the Property *and* Sandy Hollow is not the winning bidder. It is highly unlikely that Sandy Hollow would assert claims against the Village for selling the Parcel to Sandy Hollow. Thus, the issue is whether the Release bars Sandy Hollow's claims arising out of the sale of the Property to another purchaser on the grounds that such sale violates the Declaration and the SEQRA Findings.

---

[20]  In support of its position that the language in the Release is narrow, Sandy Hollow compares it to broader language which, it asserts, constitutes "[t]ypical language in a general release." Pls.' Mem. at 19 n.14. The Court disagrees. Reading the Release as a whole, the Court concludes that the language is actually quite broad. In any event, to the extent there exists "typical language in a general release," a comparison between such language and that in the instant Release is irrelevant to a determination of whether Plaintiffs' claims are barred here.

"When a release is executed in a commercial context by parties in roughly equivalent bargaining positions and with ready access to counsel, the general rule is that if the language of the release is clear . . . the intent of the parties [is] indicated by the language employed." *Consorcio Prodipe, S.A. de C.V.*, 544 F. Supp. 2d at 191 (quoting *Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir. 1977)). When general language is used in the releasing document -- as is the case here -- "the release is to be construed most strongly against the releasor. . . ." *Consorcio Prodipe, S.A. de C.V.*, 544 F. Supp. 2d at 191 (quoting *Middle East Banking Co. v. State Street Bank Intern'tl.*, 821 F.2d 897, 907 (2d Cir. 1987)) (additional citations omitted). The releasor bears the burden of establishing that the release should be limited. *Id.* Furthermore, the Second Circuit has long recognized "that, under New York law, all the facts and circumstances of the claims being released need not be disclosed in order for a release to be valid and enforceable." *Consorcio Prodipe, S.A. de C.V.*, 544 F. Supp. 2d at 191 ("Even if no semblance of fraud had come to light before the releases were executed, it [is] clear that the parties . . . intended to settle fraud claims.") (citing *Alleghany Corp. v. Kirby*, 333 F.2d 327, 333 (2d Cir. 1964) (defendant's failure to disclose all aspects of an underlying fraud did not invalidate an otherwise valid settlement agreement)). The Court finds that the language set forth in the Release is unambiguous and "makes clear the parties' intent to release all claims[,]" related to the sale of the Parcel where Sandy Hollow was not the purchaser, including circumstances that may have breached the terms of prior agreements.

Moreover, the Release was executed at arm's length by two sophisticated commercial actors, both of whom were represented by counsel, and whom regularly deal in the development of real estate. *See 2 Broadway LLC*, 2001 WL 410074, at *6 ("Where sophisticated business

entities execute mutual releases in the course of arm's length negotiations, courts are even more scrupulous in holding the parties to their bargain.") (citing *VKK Corp. v. National Football League*, 244 F.3d 114, 123 (2d Cir. 2001), ("the ability of a [sophisticated commercial actor] to disown his obligations under a contract or release . . . is reserved for extreme and extraordinary cases"). The instant Release "falls squarely within the category of negotiated agreements between sophisticated parties that must be given greatest deference by the Court." *2 Broadway LLC*, 2001 WL 410074, at *7. In light of this finding, and the clear language set forth in the Release, the Court finds that Sandy Hollow has not met its burden of establishing that the Release is limited in scope.

As set forth above, Plaintiffs further argue that the Release does not pertain to Plaintiffs' claims challenging the sale of the Property as a violation of the Declaration of Restrictive Covenants and the Village SEQRA Findings, and such sale is otherwise improper and unlawful because the Village did not conduct a supplemental SEIS. Pls.' Mem. at 19. At the outset, the Court notes that the Village has not yet sold the Parcel, and therefore, any claim arising from the *sale* of such property is not ripe. In the event, the Release does bar Plaintiffs' claims because, even if such sale were a violation of the Declaration or the Village SEQRA Findings (to the extent the Findings constitute an enforceable agreement), the Release effectively superseded both the Declaration and the Findings regarding the Village's and Sandy Hollow's rights with respect to the Parcel. Furthermore, Plaintiffs do not have standing to enforce either the Declaration or the SEQRA Findings, since both run with the land and Sandy Hollow no longer owns the parcel at issue. Finally, for the same reason, Plaintiffs do not have standing to pursue a claim arising out of the Village's failure to conduct a purportedly requisite supplemental SEIS.

42

For all of the foregoing reasons, the Court concludes that the Release is enforceable with respect to Plaintiffs' claims here.

### 2.    *Economic Duress*

"A party seeking to avoid a contract because of economic duress 'shoulders a heavy burden.'"  *2 Broadway LLC*, 2001 WL 410074, at *7 (quoting, *inter alia*, *Intern'l Halliwell Mines v. Continental Copper & Steel Indus.*, 544 F.2d 105, 108 (2d Cir. 1976)).  In the context of enforcing a release agreement against sophisticated commercial actors, the Second Circuit stated that such agreements may be voided on grounds of economic duress only in "extreme and extraordinary cases."  *VKK Corp.*, 244 F.3d at 123.  This is so even where one party to the agreement "enjoyed 'a decided economic advantage' over the other at the moment the agreements were executed:

> [because] an element of economic duress is . . . present when many contracts are formed or releases given, the ability of a party to disown his obligations under a contract or release on that basis is reserved for extreme and extraordinary cases. Otherwise, the stronger party to a contract or release would routinely be at risk of having its rights under the contract or release challenged long after the instrument became effective.

*Id*. (quoted in *2 Broadway LLC*, 2001 WL 410074, at *7-8); *see also Dufort v. Aetna Life Ins.*, 818 F.Supp. 578, 581 (S.D.N.Y.1993) ("financial or business pressure of all kinds, even if exerted in the context of unequal bargaining power, does not constitute economic duress").  "Therefore, to state a claim for economic duress, a sophisticated party must 'do more than merely claim that the other party knew about and used his or her poor financial condition to obtain an advantage in contract negotiations.'" *2 Broadway LLC*, 2001 WL 410074, at *8 (quoting *Dufort*, 818 F.Supp. at 582 (citing *Kenneth D. Laub & Co. v. Domansky*, 568 N.Y.S.2d

601, 602 (N.Y. 1991)).  "Rather, the plaintiff must allege that the defendant's actions deprived him of his free will, and that the ordinary remedy of an action for breach of contract would not be adequate."  *2 Broadway LLC*, 2001 WL 410074, at *8 (quoting *Berman v. Parco*, No. 96 Civ. 0375, 1996 WL 465749, at *7 (S.D.N.Y. August 15, 1996)).

Here Plaintiffs have not met their burden of pleading a proper claim for unenforceability of the Release based upon duress.  "Although a release may be ineffectual if it is shown to have been procured by fraud or duress, conclusory allegations of fraudulent inducement are insufficient to overcome a release's unambiguous language."  *Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178, 188 (S.D.N.Y. 2008) (citing *New York City Sch. Constr. Auth. v. Koren-DiResta Constr. Co.*, 249 A.D.2d 205, 205, 671 N.Y.S.2d 738 (1st Dep't 1998); *Fleming v. Ponziani*, 24 N.Y.2d 105, 299 N.Y.S.2d 134 (N.Y. 1969)).  The Complaint alleges that upon "[r]ealizing that their intention to sell the 8 acres was unlawful and illegal and . . . continuing to withhold the C/Os, [the Village] coerced Sandy Hollow into signing a purported 'release' of its claims relating the 8-acre parcel, under duress."  Compl., ¶ 51.  Sandy Hollow further maintains that it had no choice but to agree to the Village's "extortionist demands" because it was "[u]nder tremendous pressure from prospective unit owners and its lender."  *Id.*, ¶ 52.  This conclusory allegation, without more, is insufficient to overcome the straightforward language of the Release.  *See 2 Broadway LLC*, 2001 WL 410074, at *7 ("Unless the Complaint sufficiently states a claim to void the release agreements on grounds of economic duress, those agreements are enforceable and compel dismissal of all claims brought by plaintiff in this action.") (citing *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 695 (N.Y. 1997) ("Freedom of contract prevails in an arm's length transaction between sophisticated

parties such as these, and in the absence of countervailing public policy concerns there is no reason to relieve them of the consequences of their bargain").

Furthermore, Plaintiffs are incorrect that "the allegations [of economic duress] raise factual issues precluding dismissal" (Pls.' Mem. at 18) where, as here, the Release expressly bars the claims set forth in the Complaint. *See 2 Broadway LLC*, 2001 WL 410074, at *7 (citing *Fruchthandler v. Green*, 233 A.D. 214 (1st Dep't 1996) ("[complaint] was properly dismissed . . . since the release plaintiff executed relieved defendant from liability ... and the allegations that such release was procured through economic duress were insufficient").

### 3.    *Sufficiency Of Consideration*

During oral argument on the motion, Plaintiffs raised the issue that the Release was invalid due to lack of consideration. Specifically, the Release states that Sandy Hollow enters into the Release in exchange for $10. *See* Sokoloff Decl., Ex. T. Under New York, however, "[a] written instrument which purports to be a total or partial release of all claims, debts, demand or obligations, or a total or partial release of any particular claim, debt, demand or obligation . . . shall not be invalid because of the absence of consideration or of a seal." N.Y. Gen. Oblig. L. § 15-303 (cited in *VKK Corp*., 244 F.3d at 127). "Under New York law, the parties to a contract are free to bargain as to the consideration exchanged, even if that consideration is 'grossly unequal or of dubious value'." *Pilarczyk v. Morrison Knudsen Corp.* 965 F.Supp. 311, 322 (N.D.N.Y. 1997) (quoting *Apfel v. Prudential-Bache Secs., Inc.,* 81 N.Y.2d 470, 600 N.Y.S.2d 433, 435 (N.Y. 1993)). Accordingly, the Release cannot be voided for lack of consideration.

In light of my findings that the Release is enforceable against Plaintiffs' claims at this stage of the litigation, and that Plaintiffs have not stated a viable claim for economic duress in

connection with the Release, I respectfully recommend to Judge Feuerstein that Plaintiffs' Sixth, Seventh and Eleventh Causes of Action challenging the Village's proposed sale of the Parcel be dismissed.

**F.      Plaintiffs' Claims For Return of Fees Paid**

In the Eighth Cause of Action, entitled "Illegality of Village 'Fee Policy' and Refund of Monies," Plaintiffs seek a declaratory judgment that (i) the Village's policies requiring Plaintiffs to pay various costs and fees of more than $300,000 are "void, ultra vires and unconstitutional[,]" and (ii) the Village's imposition of "extension" and "renewal" fees for building permits was "void, ultra vires and unconstitutional."  Compl. ¶¶ 112-126.  In the Ninth Cause of Action, entitled "Ultra Vires Conduct," Plaintiffs  seek a declaratory judgment that the Village's imposition of "impact fees" of over $1 million and the requirement that Plaintiff deed over the 8 acres of undeveloped land was beyond the scope of Defendants' authority and thus was void and ultra vires.  *Id*., ¶¶ 127-131.  Plaintiffs also seek recoupment of the fees paid.  *Id*., ¶¶ 126, 131.  In particular, Plaintiffs object to their payment of certain "engineering, legal and other professional fees" in connection with the re-zoning application, as well as the fact that they were required to "deed over parkland <u>and</u> pay 'impact fees[.]" (emphasis in original).  *Id*., ¶¶ 113, 128.

The gravamen of Plaintiffs' claims under the Eighth and Ninth Causes of Action is that Defendants exceeded their authority under the Village Code.  Plaintiffs now seek review of Defendants' determinations regarding the payments of such fees.  *Id*., ¶¶ 121, 129.  Here, Plaintiffs have raised such claims as declaratory judgment actions, which is an inappropriate vehicle for such claims since they do not challenge the validity of any statute passed by the

Village.  *See Janiak v. Town of Greenville*, 203 A.D.2d 329, 331, 610 N.Y.S. 2d 286, 288 (N.Y. App. Div. 2d Dep't 1994) (declaratory judgment action is the appropriate vehicle for bringing a challenge that is "clearly legislative in nature, as evinced by its general applicability, indefinite duration and formal adoption").  Rather, the gravamen of Plaintiffs' claims is that Defendants exceeded their authority under the Village Code, and Plaintiffs now seek review of Defendants' determinations regarding the payments of such fees.  *Id.*, ¶¶ 121, 129.  Based on the nature of these challenges, the proper forum for Plaintiffs' claims was an Article 78 proceeding in the appropriate New York State Supreme Court.  *See* N.Y. C.P.L.R. § 7803 ("The only questions that may be raised in a proceeding under this article are . . . (3) whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed"); N.Y. C.P.L.R. § 7804(b) ("A proceeding under this article shall be brought in the supreme court in the county specified in subdivision (b) of section 606 except as that subdivision otherwise provides."); *see, e.g.*, *Carols v. Santos*, 123 F.3d 61, 68 (2d Cir. 1997) (Article 78 proceeding is appropriate method for challenging "an *ad hoc* determination of an individual party's rights"); *Trager v. Town of Clifton Park*, 303 A.D.2d 875, 877, 756 N.Y.S. 2d 669, 671 (N.Y. App. Div. 3d Dep't 2003) (claim alleging that "defendant illegally and arbitrarily imposed, and then increased, certain municipal fees" "should have been challenged in a CPLR article 78 proceeding").

Under 28 U.S.C. § 1441(c), a federal court may remand "matters where state law predominates."  *See Sherman v. Town of Chester*, No. 01 Civ. 8884, 2001 WL 1448613, at *4-5 (S.D.N.Y. Nov. 15, 2001) (remanding claim that Town acted *ultra vires* in enacting a

moratorium on development aimed only at plaintiff). Here, however, Plaintiffs' time to bring an

Article 78 proceeding has expired. Article 78 proceedings are governed by a four-month statute

of limitations. *See* N.Y. C.P.L.R. § 217; *Trager*, 303 A.D.2d at 877-78, 756 N.Y.S. 2d at 671.

In the Complaint, Sandy Hollow alleges it was improperly required to pay for the JAC Study in

1999 (Compl., ¶¶ 29-30, 122); agreed to convey the Parcel and make a donation to the Village

Park fund in 2002 (*id.*, ¶ 36); paid for renewal building permits in 2005 (*id.*, ¶¶ 40-54); and paid

engineering and legal fees in connection with the re-zoning application in 2006 (at the latest)

(*id.*, ¶ 55). Because Plaintiffs did not challenge the Village's exercise of authority in requiring

payment of these fees within four months, Plaintiffs are now barred from alleging such claims

here.

In light of these circumstances, I respectfully recommend to Judge Feuerstein that

Plaintiffs' Eighth and Ninth Causes of Action be dismissed.

## V.     DEFENDANTS' MOTION TO VACATE THE *LIS PENDENS*

On June 10, 2009 (five days after filing the Complaint in this action), Plaintiffs filed a *lis

pendens* against the eight-acre Parcel it conveyed to the Village. Defs.' Mem. at 19; Sokoloff

Decl., Ex. V. Plaintiffs amended the *lis pendens* on July 29, 2009. *Id.* Defendants move to

vacate the *lis pendens* on the grounds that the underlying complaint (1) does not "state a legally

sufficient claim affecting the real property at issue;" (2) was brought in bad faith; and (3) "is not

backed by a bona fide claim that affects title to the subject property." Pls.' Mem. at 20-21. In

opposition, Plaintiffs maintain that they have stated "plausible claims which affect possession,

enjoyment or title to the Property (including, *inter alia*, the fourth, fifth, sixth, seventh and

eleventh causes of action)." Pls.' Mem. at 25. Plaintiffs further contend that Defendants have

not met their burden of proof under Section 1951 of the New York Real Property Actions and

Proceedings Law to show that Plaintiffs no longer enjoy benefits of the Parcel. *Id.*, at 22.

Rather, according to Plaintiffs, the "benefit provided by the Declaration was to provide

permanent open space to mitigate the adverse environmental impacts." *Id.* Plaintiffs also cite to

the "public trust doctrine" in support of the *lis pendens*. *Id.*

A.    **Standard Of Review**

Under Rule 64 of the Federal Rules of Civil Procedure, the Court must look to state law

when analyzing questions regarding the *lis pendens*. Fed. R. Civ. P. 64; *Ulysses I & Co., Inc. v.*

*Feldstein*, No. 01 CV 3102, 2002 WL 1813851, at *17 (S.D.N.Y. Aug. 8, 2002). Section 6501

of the New York Civil Practice Law and Rules ("CPLR") provides that a "notice of pendency

may be filed in any action in a court of the state or of the United States in which the judgment

demanded would affect the title to, or the possession, use or enjoyment of, real property. . . ."

Thus, a *lis pendens* constitutes "constructive notice" to all future purchasers or those seeking to

encumber a property that "[a] person whose conveyance . . . is recorded after the filing of the

notice is bound by all proceedings taken in the action after such filing to the same extent as a

party." *Id.*; *see also 5303 Realty Corp. v. O & Y Equity Corp.*, 64 N.Y.2d 313, 317-18, 486

N.Y.S.2d 877, 880-81 (N.Y. 1984). Because a notice of pendency in New York is considered a

"unique provisional remedy," *In re Sakow*, 97 N.Y.2d 436, 441, 741 N.Y.S.2d 175, 179 (N.Y.

2002), Article 65 is "narrowly interpreted by New York Courts, both as to its procedural

requirements and to its substantive application." *Diaz v. Paterson*, 547 F.3d 88, 91 (2d Cir.

2008) (citing *5303 Realty Corp.*, 64 N.Y.2d at 320-21).

In the instant case, Defendants are moving under Section 6514(b) of the CPLR, which sets forth when the Court may, in its discretion, cancel a notice of pendency: "The court, upon motion of any person aggrieved and upon such notice as it may require, may direct any county clerk to cancel a notice of pendency, if the plaintiff has not commenced or prosecuted the action in good faith." This discretionary cancellation provision "has been interpreted to encompass such grounds as failure of the complaint to state a cause of action affecting real property." *American Motor Club, Inc., v. Neu*, 109 B.R. 595, 598 (Bankr. E.D.N.Y. 1990).

### B. Application

The propriety of the *lis pendens* turns on whether the pleadings state a cause of action for which "the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property." *DLJ Mortgage Capital, Inc.*, 2009 WL 1652253 at *2 (quoting CPLR 6501). In examining whether the *lis pendens* is proper, the Court must accept as true at this stage all allegations in the Complaint but must further "look to the primary purpose of the action," rather than simply rely on the stated demand for relief. *Am. Motor Club, Inc.*, 109 B.R. at 598 (citing *Will of Sabatino*, 90 Misc.2d 56, 57-58 (N.Y. Surr. Ct. 1977)). In *American Motor Club, Inc.*, Chief Judge Duberstein outlined the subsequent steps to be taken by the Court in analyzing the "primary purpose" issue:

> The court then determines if the lawsuit directly relates to the property or merely involves it indirectly. The test is whether the plaintiff makes claim to some right, title, or interest in the lands of the defendant which might be lost under the recording acts in the event of a transfer of the subject property by the defendant to a purchaser for value and without notice of the claim.

109 B.R. at 598 (citing *Braunston v. Anchorage Woods, Inc.*, 10 N.Y.2d 302 (1961)).

Here, the main point of contention between the parties is whether, and to what extent, the judgment sought by Plaintiffs in the underlying action "would affect the title to, or the possession, use or enjoyment of" the eight-acre Parcel. *See DLJ Mortgage Capital, Inc.*, 2009 WL 1652253 at *2. In light of my findings set forth above, and the fact that Plaintiffs have no ownership interest in the Parcel (and have not had any such interest since they entered into the Bargain and Sale Deed in 2005), Plaintiffs' alleged claims to the Parcel vis-a-vis the *lis pendens* are now moot. Further, in light of my recommendation that the Complaint be dismissed in its entirety, there is no potential judgment on which to base a *lis pendens*. Accordingly, I respectfully recommend to Judge Feuerstein that Defendants' motion to vacate the *lis pendens* be GRANTED.[21]

VI.    CONCLUSION

For the forgoing reasons, I respectfully recommend to Judge Feuerstein that Defendants' Motion for Judgment on the Pleadings be GRANTED in its entirety. I further respectfully recommend that Defendants' Motion to Vacate the *Lis Pendens* be GRANTED.

****

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, any objections to this Report and Recommendation must be filed within fourteen (14) days of service. Each party has the right to respond to the other's objections within fourteen (14) days after being served with a copy. *See* Fed. R. Civ. P. 6(a),(e), 72. All objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Sandra J. Feuerstein. Any request for an extension of time for filing

_____

[21]    In light of the Court's recommendation here, it is unnecessary to address whether Defendants have met their burden under Section 1951 of the New York Real Property Actions and Proceedings Law with respect to whether Plaintiffs currently enjoy benefits of the Parcel.

objections must be directed to Judge Feuerstein prior to the expiration of the period for filing objections.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated:  Central Islip, New York
        September 6, 2010

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge